HASKELL ET UX. *v.* SCOTT.

VENDOR'S LIEN.—*Conveyance to Married Woman.*—*Payment of Purchase-Money by Third Person.*—*Contract.*—The owner of certain real estate conveyed the same to a married woman, and put her in possession thereof, taking the promissory note of a third person for the unpaid balance of the purchase-money. The maker of such note, having paid off the same, brought an action against such married woman, to enforce a vendor's lien against such real estate for the amount of such note, alleging that, after the conveyance of such real estate, she had agreed with the plaintiff, that, on his payment of such note, he should have a lien for the amount thereof, against such real estate.

*Held,* that the vendor of real estate conveyed to a married woman has a lien against the same for unpaid purchase-money ; but,

*Held,* that the taking of said promissory note for such purchase-money was a waiver of the right to hold a vendor's lien for the same.

*Held,* also, that such subsequent agreement to give the plaintiff a lien for the amount of such note was without consideration, was not for the betterment of her estate, and was not binding upon her as a married woman.

From the Hamilton Circuit Court.

*D. Moss, T. J. Kane* and *T. P. Davis,* for appellants.
*J. W. Evans* and *R. R. Stephenson,* for appellee.

PERKINS, C. J.—The. following is the substance of the complaint:

The plaintiff alleges, that on the 1st day of January, 1869, Jacob Steffey and wife conveyed by warranty deed, to Mrs. Martha E. Haskell, a certain eighty-acre tract of land, lying in Hamilton county, Indiana, for the consideration of two thousand one hundred and fifty dollars, and put her in possession ; that on the 17th day of May, 1870, four hundred and twenty-seven dollars of the purchase-money remained unpaid, for which sum the vendors had a lien, by law, on the land, which they were threatening to enforce; that, at the date last aforesaid, said Martha, with the consent of her husband, agreed with the plaintiff, that, if he would pay off the balance due to Steffey, he should have a lien on said land for the amount; that he, in pursuance of said agreement, did pay the said amount to Steffey; that he paid it on the credit of said real estate; that the defendants have not, nor has either of them, any property subject to execution, except said farm; that the payment of said money . by the plaintiff was reasonably calculated to benefit said real estate; the plaintiff further says, the amount so paid by him is due and unpaid; and he claims payment of the amount, with ten per cent. interest, that it be declared a lien on the land, and a sale of the land without relief be decreed, etc.

Demurrer to the complaint was overruled, and exception taken. The defendants severally answered the general denial.

Said Martha Haskell answered further, in two affirmative paragraphs:

1. A set-off of the value of work and labor done for the plaintiff before her marriage, accompanied by a bill of particulars.

2. That at the time of making the contract, alleged by the plaintiff, with him, she was a married woman.

A demurrer to the second affirmative paragraph of answer was sustained, and exception taken.

Reply in denial of the first.

The issues were tried by a jury, and a verdict was returned for the plaintiff, for five hundred and fifty-eight dollars.

A motion for a new trial was overruled, as was a motion in arrest of judgment, and proper exceptions were noted.

The court rendered no judgment for the recovery of the money, but simply declared the amount a lien on the real estate, and ordered the land sold to discharge it.

The facts in the case are few, so far as shown by the record:

The purchase of the land was made by Mrs. Haskell, on the 1st of January, 1869, and the deed therefor received on that day. Mrs. Haskell is the daughter of the plaintiff, Thomas Scott. Said Scott was a witness on the trial of the cause, and testified thus: "I remember of Martha E. Haskell, the defendant, buying land of Jacob Steffey," describing it. "The purchase price of the land was two thousand one hundred and fifty dollars. There were four hundred and twenty-seven dollars left unpaid on the land, after my daughter paid out what money she had. Steffey said he would not make her a deed, unless I would agree to pay the balance of the money. I gave my note for the balance of the money," and the deed was made. This note Scott paid in May, 1870, two months before it fell due, pursuant to the arrangement he made with Steffey, when the note was given, that it might be paid before it became due. The note was not given at the request of Mrs. Haskell, but of Steffey; though months after the note was given, but just how long does not appear, Mrs. Haskell told Scott that if he paid it he should have a lien on the land for the amount.

Mrs. Haskell has no property except the land in question.

This suit was commenced on the 18th day of March, 1875.

It seems to be the settled law in this State, that a vendor of real estate may have a lien upon such estate, for unpaid purchase-money, against a married woman, grantee. *Cox's Adm'r* v. *Wood*, 20 Ind. 54; *Perry* v. *Roberts*, 30 Ind. 244.

It is equally well settled, that the taking of the note of a third person, under such circumstances as appear in this case to have attended the taking of the note of Scott, operates as a waiver of the vendor's lien.

The vendor refused to part with his title in reliance upon a vendor's lien, but required the separate obligation of Thomas Scott for the payment of the purchase-money, upon the faith of which obligation he conveyed the land to the vendee. In 2 Sugd. on Vendors, p. 384, 8th Am. ed., it is laid down, that, "If a vendor take a distinct and independent security for the purchase-money, his lien on the estate is gone; such a security is evidence that he did not trust to the estate as a pledge for his money." See *Dibblee* v. *Mitchell*, 15 Ind. 435; *Yaryan* v. *Shriner*, 26 Ind. 364.

As the giving of the note by Scott to Steffey for balance of purchase-money prevented the attaching of any lien therefor upon the property, and as it was given without request from Mrs. Haskell, or upon any contract by which a lien in favor of Scott upon the land was created, on account of his giving and paying the note, and as Mrs. Haskell, in consequence of her coverture, was not personally liable for said purchase-money, we may view this case, and it will simplify it to do so, as one presenting these facts, viz.: Mrs. Haskell owned a farm on which there was no lien, and for the purchase-money of which she was personally not liable in any amount; but she voluntarily, without any new consideration, promised Mr. Scott that he should have a lien upon said farm for the amount of an old and void demand against her, a past

consideration; and the question presented for decision is, did that promise constitute a contract, by virtue of which the real estate of Mrs. Haskell, a married woman, might be charged with a lien? As a general rule, the disability of coverture renders a woman incapable of binding herself by contract. It also disables her to bind her real estate by contracts touching the same, unless they are conscionable and for the betterment thereof, except in the cases where the statute expressly authorizes it. *Crickmore* v. *Breckenridge*, 51 Ind. 294, and cases cited; *Shannon* v. *Bartholomew*, 53 Ind. 54; *Thomas* v. *Passage*, 54 Ind. 106. The appellee, the plaintiff below, understood this rule of law, and sought to bring his case within it. He alleged, in his complaint, that the promise of Mrs. Haskell, that the appellee should have a lien on her farm, was a contract for the betterment of the farm.

And here we may remark, that it is unnecessary for us to pass upon the sufficiency of the complaint, because, be it good or bad, its allegations are not sustained by the evidence. If Mrs. Haskell had made the promise to Scott, averred in the complaint, at the time she purchased the farm, as the consideration for the giving of the note by Scott, it might, perhaps, in a legal sense, have constituted a contract for the benefit of the farm, but this we do not decide. See Schouler Domestic Relations, 2d ed., p. 237, *et seq.* It might have freed her farm from one lien by the substitution of another. But no such promise was made or required on the giving of the note; and no circumstances appear, justifying the court in the least degree, in giving a relation back to that transaction, if indeed, it could under any circumstances have such relation. The giving of the note at once prevented a lien from attaching to the farm. Long afterward, when neither Steffey nor Scott had any lien, and when Scott was bound to pay his note to Steffey, without any inducement being held out by Mrs. Haskell, she promised him,

that, if he paid the note, he should have a lien on the farm for the amount of it.

This was not an undertaking for its benefit. What benefit could it be to the farm, then clear of incumbrance, to put a lien upon it, not for any thing to be done or for any new betterment to be placed upon it, but simply to render it subject to an old ·invalid claim, from which it was then free.

Manifestly, the contract claimed to exist by virtue of the promise in question was for the benefit of Scott alone, and to the injury of the farm.

The judgment below is reversed, with costs, and the cause remanded.